**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**CLAUDE STATEN,**

     **Plaintiff,**      16-cv-5317

  **- against -**       **MEMORANDUM OPINION**
              **AND ORDER**

**THE CITY OF NEW YORK,**

     **Defendant.**

---

**JOHN G. KOELTL, District Judge:**

  Pro se plaintiff Claude Staten, an officer with the New
York City Police Department ("N.Y.P.D"), brought this employment
discrimination action against the City of New York ("the City")
alleging various causes of action under federal, state, and
local law. This suit -- Staten's third federal litigation
against the City -- includes claims under Title VII of the Civil
Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*,
the Age Discrimination in Employment Act of 1967 ("ADEA"), 29
U.S.C. §§ 621 *et seq.*, the New York State Human Rights Law
("NYSHRL"), N.Y. Exec. L. §§ 290 *et seq.*, and the New York City
Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §8-101 *et seq.*
In particular, the plaintiff alleges that the City has impeded
his advancement within the N.Y.P.D. because of the plaintiff's
age, race, and color. He also alleges that he was subjected to a
hostile work environment and that the N.Y.P.D. retaliated
against him. The City now moves to dismiss the complaint in its

entirely pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the claims are subject to claim preclusion, that many of the claims are time-barred, and that the Complaint otherwise fails to state a plausible claim for relief. For the reasons set forth below, the motion is **granted.**

## I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a

court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. Villar v. Ramos, 2015 WL 3473413, at *1 (S.D.N.Y. June 2, 2015).

When faced with a pro se complaint, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (internal quotation marks omitted). Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." Id.

## II.

For the purposes of the motion to dismiss, the Court accepts as true the factual allegations in the Complaint.

**A.**

The plaintiff, a fifty-two year-old Black-Hispanic male,
has been employed by the N.Y.P.D for over thirty years. Amended
Complaint ("Compl."), ECF No. 13, p. 3; Compl. Ex. 2 p. 3, ECF
No. 13-2. Three years into his tenure as an officer, the
plaintiff took his first promotional exam in order to seek
eligibility for promotion to the rank of sergeant. Compl. p. 33.
Although the plaintiff allegedly passed the exam, he was told
that he had failed and was therefore not put on the list of
individuals eligible for promotion at that time. Id. More than
ten years later, in 2011, the plaintiff sat for and passed Exam
Number 1533 for promotion to the rank of sergeant. Compl. ¶ 1.
As a result, the plaintiff received a "list number" placing him
among a pool of individuals eligible to be promoted to the rank
of sergeant, but was not among those actually promoted from the
list. Id. ¶ 15. The plaintiff alleges that multiple white
officers under the age of forty with list numbers behind the
plaintiff's -- that is, who scored lower on the Exam -- were
promoted from the same promotional exam list. Id. ¶¶ 15-18, 22-
23.

The plaintiff also alleges that he filed for and was
qualified to take Exam Number 5535 in April 2015 for promotion
to the rank of lieutenant, but was denied the chance to sit for
the exam despite having been permitted to take a lieutenant's

4

exam in 2011. Id. ¶¶ 1, 21, 23.[1] The plaintiff alleges that the decisions not to promote the plaintiff to the rank of sergeant following Exam Number 1533 and not to allow the plaintiff to sit for Exam Number 5535 were made on the basis of the plaintiff's "color, race, and age" in violation of Title VII, the ADEA, and the New York State and New York City Human Rights Laws. Id. ¶ 23.

The plaintiff also alleges that he has been repeatedly assigned to dangerous posts and given unfavorable work assignments. For example, the plaintiff alleges that in January 2000 he was assigned a post as the precinct cell attendant in the 046 precinct after a white male officer with less seniority than the plaintiff protested to the assigning sergeant. Compl. ¶ 34. The plaintiff alleges that, over an unspecified period of time, he has been placed on a particularly dangerous post within the 046 precinct on multiple occasions and has been involved in two officer-related shootings while on duty there. Id. ¶¶ 26-27. He further alleges that, whereas certain white officers have been rewarded with departmental recognition and special job assignments following police-related shootings, the plaintiff "was not credited for [his] heroic acts." Id. ¶ 28; 52-53; p. 33.

---

[1] The plaintiff failed the earlier lieutenant's exam, Exam Number 1534. Compl. Ex. 1, ECF No. 13-1 p. 28.

The plaintiff also alleges that he has been repeatedly assigned to work the "barrier section," which is located in Queens more than two hours from his home and, because of the timing of his normal tours, the shift often leaves him sleep deprived. Id. ¶¶ 60-63. The barrier section assignment requires significant physical labor, and the plaintiff alleges that that work was made more difficult on at least one occasion in June 2016 when he was forced to perform the work while assigned to a truck with no working air conditioning. Id. ¶¶ 65-68.

The Complaint also alleges discriminatory and harassing behavior by several individuals at the N.Y.P.D. The Complaint alleges that on one occasion a Sergeant Leone spoke to the plaintiff "in a very nasty, and unprofessional manner," gave him an unfavorable assignment requiring him to transport a prisoner from Bronx central booking to Montefiore hospital, and refused to provide the plaintiff with a patrol car with a partition to use during the trip. Id. ¶¶ 37-39. Two other officers of color allegedly reported to the plaintiff that Sergeant Leone had been rude and disrespectful to them, and that they felt Sergeant Leone was racist. Id. ¶¶ 43-45.

The plaintiff alleges that another white supervisor, Sergeant Joseph Doria, has repeatedly given him unfavorable assignments, including assigning the plaintiff to a midnight "foot post" at a time when the plaintiff was recovering from a

broken ankle without providing the plaintiff with a vehicle, and assigning him to multiple other posts which the plaintiff considered to be "rookie" or "undesirable" posts. Compl. ¶¶ 47-51. The plaintiff also alleges that former N.Y.P.D. Lieutenant Kristine Schelberger mounted "an ongoing attack" against the plaintiff throughout the years 2008 through 2010, apparently by participating in the presentation of charges against the plaintiff by the Internal Affairs Bureau, and put the plaintiff in "threat of unnecessary harm" when she acted as his platoon commander in or around 2013. Id. ¶¶ 56-58.

The plaintiff also alleges that, in January 2016, Lieutenant Gabriel Healy made an inappropriate sexually explicit comment to the plaintiff, and that on two other occasions Lieutenant Healy made inappropriate jokes about the plaintiff "harassing" female officers in the office. Compl. ¶¶ 71-80. The plaintiff alleges that this behavior created a hostile work environment and constituted harassment in violation of Title VII and the New York City and New York State Human Rights Laws. He also alleges that a Lieutenant Hillian wrongfully refused to correct and consolidate the plaintiff's sick reports as a form of retaliation against the plaintiff "for speaking out against the NYPD." Id. ¶¶ 92-94.

Finally, the plaintiff alleges that he believes that the N.Y.P.D. was responsible for the disruptive and aggressive

questioning of the plaintiff's then-sixteen year-old daughter at his home in Monticello, New York, in what he believes was a failed attempt to discover the plaintiff in violation of the N.Y.P.D. residency requirements. Compl. ¶¶ 81-87.

In sum, the Complaint alleges a wide-ranging plot to impede the advancement of the plaintiff's career and force the plaintiff to quit or retire. Prior to filing suit, the plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 29, 2016. Compl. p. 3.[2] Construed liberally, the Complaint asserts claims for (1) race and age discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.* and the ADEA; (2) creation of a hostile work environment; (3) retaliation; (4) race and age discrimination in violation of the New York State Human Rights Law; and (6) race and age discrimination in violation of the New York City Human Rights Law. The plaintiff seeks $25 million in damages, as well as fees and costs.

---

[2] The plaintiff received a right to sue letter on March 31, 2016. ECF No. 13 p. 47. That letter could not have corresponded to the relevant EEOC complaint, which was apparently filed June 29, 2016. ECF No. 13 p. 3. However, the City confirmed at oral argument on the motion that it does not contend that the plaintiff failed to obtain a right to sue letter corresponding to the June 29 EEOC complaint, and thus does not argue that the claims in the Amended Complaint are unexhausted.

**B.**

This not the plaintiff's first litigation against the City.
In <u>Staten I</u>, the plaintiff sued the City pursuant to 42 U.S.C.
§§ 1981 and 1983 and the New York State and New York City Human
Rights Laws. <u>Staten v. City of New York</u>, ("<u>Staten I</u>"), 2014 WL
3907926, at *1 (S.D.N.Y. Aug. 7, 2014). The plaintiff alleged
that the City had discriminated against him by failing to
promote him to the rank of sergeant in 2011 and 2012 despite the
fact that he had taken and passed the sergeant's exam. <u>Id.</u> at
*3. Because the plaintiff had been placed on "Level II"
performance monitoring based on his employment history, the
plaintiff was required to appear before the Career Advancement
Review Board ("CARB") for assessment before being promoted to
the rank of sergeant. <u>Id.</u> at *2-*3. The plaintiff's commanding
officers and supervisors repeatedly recommended that the
plaintiff not be promoted based on, among other things, his poor
sick leave record, his troubling disciplinary history, and his
failure to take responsibility for past disciplinary issues. <u>Id.</u>
at *3. On both occasions that the plaintiff appeared before the
CARB, the Board unanimously voted not to promote the plaintiff
to the rank of sergeant. <u>Id.</u> The court in <u>Staten I</u> dismissed the
plaintiff's claims on summary judgment, concluding that the
plaintiff's allegation that the City had targeted him on the
basis of race was conclusory and based "on mere conjecture" and

9

was thus insufficient to rebut the City's non-discriminatory justification for failing to promote the plaintiff. Id. at *6.

In Staten II, the plaintiff sued the City pursuant to Title VII, the ADEA, and the New York State and New York City Human Rights Laws, alleging race and age discrimination, hostile work environment, and retaliation. Staten v. City of New York, ("Staten II"), 2015 WL 4461688, at *1 (S.D.N.Y. July 20, 2015). The plaintiff alleged, among other things, that the N.Y.P.D. failed to promote him to the rank of sergeant on the basis of his age and race despite the fact that he sat for and passed Exam Number 1533, making him eligible for promotion to the rank of sergeant. Id. *1-2. The complaint also alleged that the N.Y.P.D. failed to recognize the plaintiff's "acts of bravery and heroics" following two shooting incidents and awarded special treatment to similarly situated white officers; that the plaintiff had been forced to work the barrier section because of his race and color; and that Lieutenant Schelberger had placed the plaintiff in unnecessary danger because of his race. Id. *3-4.

The district court granted the City's motion to dismiss. The court concluded that the plaintiff's claims regarding failure to promote were subject to claim preclusion because the new allegations merely "provide[d] additional supportive examples" of failure to promote and did not form "any new,

distinct bases" for the plaintiff's claims that could not have been raised in Staten I. Id. at *6-8. The court also determined that certain of the claims in the complaint were time-barred, and that the remaining claims failed to state a claim upon which relief could be granted. See id. at *8-14. In particular, the court concluded that plaintiff had failed to plead any timely facts supporting an inference of race, age, or other discriminatory motive. Id. at *11-14.

The Court of Appeals affirmed the judgment dismissing the plaintiff's claims. The court agreed that "claim preclusion applies to bar relitigation of Staten's promotion claims because he could have raised those claims in his prior federal action, which raised nearly identical claims"; that many of the plaintiff's claims were time-barred; and that the complaint failed to allege facts sufficient to support a claim of hostile work environment. Staten v. City of New York, ("Staten III"), 653 F. App'x 78, 79-81 (2d Cir. 2016) (summary order). The Court of Appeals also noted in rejecting the plaintiff's hostile work environment claim that "receiving orders to work in dangerous locations or control dangerous situations, absent more, does not amount to hostile work environment given Staten's employment as a police officer." Id. at 81.

Finally, the plaintiff challenged the decision not to allow the plaintiff to sit for the lieutenant's exam, Exam Number

5535, in an Article 78 proceeding in New York state court. See Staten v. City of New York, ("Staten IV"), No. 101627/2016 (Sup. Ct. N.Y. Cty. March 8, 2017), ECF No. 18-1. The court there concluded that there was a rational basis for denying the plaintiff the opportunity to sit for the exam -- namely, that only those who hold the rank of sergeant may sit for the lieutenant's exam, and the plaintiff had not been appointed to the rank of sergeant. ECF No. 18-1 pp. 3-4.

## III.

The City now moves to dismiss the Complaint in its entirety. The City argues that the claims in the Complaint are barred by claim and issue preclusion; that many of the claims are time-barred; and that the Complaint otherwise fails to state any plausible claim for relief.

## A.

The doctrine of claim preclusion forecloses litigation of a claim that has been adjudicated in an earlier suit. Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc., 779 F.3d 102, 107-08 (2d Cir. 2015). Dismissal of a claim on the basis of claim preclusion requires a showing that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the same adverse parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Id. at

108 (alteration omitted) (quoting TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 499 (2d Cir. 2014)). It is undisputed that both Staten I and Staten II constitute an adjudication on the merits of the claims brought in those actions. See Berrios v. N.Y.C. Hous. Auth., 564 F.3d 130, 134-35 (2d Cir. 2009) (dismissal of a complaint for failure to state a claim "is a final judgment on the merits" which "precludes the parties or their privies from relitigating issues that were or could have been raised in that action" (quotation marks omitted)). "Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." Id. at 135 (quotation marks omitted).

The City argues that the Complaint must be dismissed because the various allegations of discrimination and retaliation have already been litigated on their merits and resolved against the plaintiff. The plaintiff offers no meaningful argument in response but simply restates allegations made in the Complaint. See Mem. in Opp. to Mot. at 13-15.

The claims related to Exam Number 1533 for promotion to the rank of sergeant and Exam Number 5535 for promotion to the rank of lieutenant are plainly precluded. The plaintiff already sued the City for failing to promote him following Exam Number 1533. See Staten II, 2015 WL 4461688, at *1-3. Those claims were dismissed precisely because they had already been litigated in

<u>Staten I</u> and were themselves subject to claim preclusion. <u>See</u> <u>id.</u> at *7-8; <u>see also</u> <u>Staten III</u>, 653 F. App'x at 79 (affirming dismissal on the basis of claim preclusion). The plaintiff insists that his claim this time around is not for failure to promote, but rather a claim that the defendant has "put[] forth efforts to stop [his] career advancement." Mem. in Opp. to Mot. p. 4. But the precise legal theory the plaintiff chooses to set out is irrelevant for the purposes of claim preclusion. "[W]hatever legal theory is advanced, when the factual predicate upon which claims are based are substantially identical, the claims are deemed to be duplicative for purposes of [claim preclusion]." <u>Berlitz Schs. of Languages of Am., Inc. v. Everest House</u>, 619 F.2d 211, 215 (2d Cir. 1980). However styled, the plaintiff's allegations regarding the N.Y.P.D's failure to promote the plaintiff following Exam Number 1533 are duplicative of the claims at issue in <u>Staten II</u> and are therefore precluded.

The allegations surrounding the lieutenant's exam, Exam Number 5535, must also be dismissed. "It is true that res judicata will not bar a suit based upon legally significant acts occurring <u>after</u> the filing of a prior suit that was itself based upon earlier acts." <u>Waldman v. Village of Kiryas Joel</u>, 207 F.3d 105, 113 (2d Cir. 2000). But "claim preclusion may apply where some of the facts on which a subsequent action is based post-date the first action but do not amount to a new claim." <u>Storey</u>

v. Cello Holdings, LLC, 347 F.3d 370, 384 (2d Cir. 2003)

(Sotomayor, J.). Thus, when the new acts are "nothing more than

additional instances of what was previously asserted," and when

the instant complaint is based "principally upon the common

nucleus of operative facts shared" with the already-decided

action, claim preclusion applies. Waldman, 207 F.3d at 113.

Under those circumstances, such facts do "not create a 'new'

cause of action that did not exist when the prior suits were

brought." Id. at 112. The allegations regarding the N.Y.P.D.'s

refusal to allow the plaintiff to sit for Exam Number 5535 are

"nothing more than additional instances of what was previously

asserted," id., that is, that the N.Y.P.D. discriminated against

the plaintiff by wrongfully failing to promote him after he had

passed the sergeant's exam. The plaintiff may not revive the

claims by simply pointing to new instances of the same sort of

conduct that he alleged in Staten I and Staten II was

discriminatory. See Staten I, 2014 WL 3907926, at *3 ("Plaintiff

asserts that the City has violated his civil rights because even

though he took, and passed, the examination for promotion to the

rank of Sergeant . . . numerous times, the N.Y.P.D. has never

promoted him during the last twenty-one years."); Staten II,

2015 WL 4461688, at *7-8 (dismissing claims for failure to

promote because those claims were litigated in Staten I). The

refusal to allow the plaintiff to sit for Exam Number 5535 was

the inevitable consequence of the failure to promote the plaintiff to the rank of sergeant, which failure has already been the subject of litigation between the parties. Because the plaintiff's claim that the N.Y.P.D. has wrongfully failed to promote him notwithstanding the fact that he passed at least one sergeant's exam has already been adjudicated on the merits and resolved against the plaintiff, it is subject to claim preclusion and must be dismissed.

The claims in the Complaint that are based on allegations that the plaintiff has been forced to work the "barrier section," that he did not receive recognition or accolades from the N.Y.P.D. following two officer-involved shootings, and that he has been assigned to particularly dangerous posts are likewise subject to claim preclusion. Those issues were all "raised and adjudicated in a prior litigation between the parties." Marcel Fashions, 779 F.3d at 108; see Staten II, 2014 WL 3907926, at *3-4 (describing the plaintiff's allegations that the "Defendant failed to recognize [the plaintiff's] 'acts of bravery and heroics' when he was involved in two shooting incidents in 1996 and 2000," that Lieutenant Schelberger "plac[ed] him in dangerous situations," and that the plaintiff "has been assigned to the barrier section in Long Island City, Queens at least twice per month since September 2014"). The inclusion of multiple occasions on which the plaintiff has been

assigned to a dangerous post are "nothing more than additional instances" of his earlier claims to the same effect. See Staten III, 653 F. App'x at *80-81 (affirming dismissal of claims that the plaintiff was forced to work dangerous posts because "receiving orders to work in dangerous locations or control dangerous situations, absent more, does not amount to a hostile work environment given Staten's employment as a police officer").

Moreover, because all of the allegations that pre-date the amended complaint in Staten II "could have been[] raised in the prior action," those claims are also precluded. Marcel Fashions, 779 F.3d at 108. Thus, all of the claims based on conduct that allegedly occurred prior to November 19, 2014 must be dismissed. See Staten II, 14-cv-4307, ECF No. 11.[3] In sum, the claims in the complaint alleging that the N.Y.P.D. wrongfully interfered with the plaintiff's career advancement to the rank of sergeant, Compl. ¶¶ 13-24; that the plaintiff was wrongfully given unduly dangerous work assignments and wrongfully denied accolades following officer-involved shootings, Compl. ¶¶ 25-35, 52-55; that the plaintiff was mistreated by Lieutenant Schelberger,

---

[3] This includes the allegations regarding the assignment of Officer Gregory Manning to the 046 precinct in January 2000; allegations regarding an alleged "ongoing attack" against the plaintiff by Lieutenant Shelberger between 2008 and 2013; and allegations regarding the plaintiff's use of sick leave prior to November 2014. Compl. ¶¶ 34-35; 57-59; 89-93.

Compl. ¶¶ 56-59; and that the plaintiff was wrongfully forced to work the "barrier section," Compl. ¶¶ 60-70, are all barred by the doctrine of claim preclusion and are dismissed.

## B.

The City also argues that many of the claims in the Complaint are time-barred. Prior to filing a federal claim pursuant to Title VII or the ADEA, and individual must file an administrative charge with the EEOC "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(B). "[C]laims based on conduct that occurred more than 300 days before the plaintiff filed his EEOC charge are time barred" and cannot be brought in the later federal action. Staten III, 653 F. App'x at 80 (citing 42 U.S.C. § 2000e-5(e)(1)). Moreover, the 300 day period "begins to run when each discrete discriminatory and retaliatory act occurs." Hill v. Citibank Corp., 312 F. Supp. 2d 464, 473 (S.D.N.Y. 2004) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113-14 (2002)).

Because the plaintiff filed the relevant EEOC complaint on June 29, 2016, the only timely federal claims are those that accrued on or after September 3, 2015.[4] Accordingly, all claims

_____

[4] The plaintiff attaches another EEOC complaint to the Amended Complaint, which is dated January 11, 2017. ECF No. 13 p. 39. It is unclear whether that complaint was actually filed with the EEOC, and the plaintiff has not submitted a right to sue letter

based on the following allegations are time-barred and must be
dismissed: (1) the allegations of failure to promote the
plaintiff to the rank of sergeant or to allow him to take Exam
Number 5535 for promotion to the rank of lieutenant, Compl.
¶¶ 13-24 (for exams that took place in August 2011, October
2011, and April 2015); (2) the allegations surrounding Officer
Manning's assignment to the 046 precinct in January 2000, Compl.
¶¶ 34-35; (3) the alleged harassment and discrimination by
Lieutenant Shelberger between 2008 and 2010 and in 2013 Compl.
¶¶ 56-58; and (4) allegations of retaliation related to the
plaintiff's sick leave in 1989, 2002, 2004, and 2012-2014,
Compl. ¶¶ 89-93.

## C.

The City also argues that, even for those claims which are
not precluded or time-barred, the allegations in the Complaint
fail to state a plausible claim for relief and thus must be
dismissed. The Court agrees.

## 1.

Title VII makes it unlawful for an employer to discriminate
on the basis of "race, color, religion, sex, or national
origin," 42 U.S.C. § 2000e-2(a)(1), and the ADEA prohibits

---

from the EEOC relating to that complaint, but it is irrelevant
for statute of limitations purposes because the allegations
contained in that complaint would be subject to an even later
statute of limitations compared to the June 29, 2016 complaint.

discrimination on the basis of age, 29 U.S.C. § 623(a). A prima

facie case of "disparate treatment" discrimination under either

statute requires a showing that the plaintiff (1) was a member

of the protected class; (2) that he was qualified for his

position; (3) that he experienced an adverse employment action;

and (4) that the action took place "under circumstances giving

rise to an inference of discrimination." Bucalo v. Shelter

Island Union Free Sch. Dist., 691 F.3d 119, 129 (2d Cir. 2012)

(ADEA); Mario v. P&C Food Markets, Inc., 313 F.3d 758, 767 (2d

Cir. 2002) (Title VII). Although a plaintiff need not establish

a prima facie case of discrimination to survive a motion to

dismiss, "absent direct evidence of discrimination, what must be

plausibly supported by facts alleged in the complaint is that

the plaintiff is a member of the protected class, was qualified,

suffered an adverse employment action, and has at least minimal

support for the proposition that the employer was motivated by

discriminatory intent." Littlejohn v. City of New York, 795 F.3d

297, 311 (2d Cir. 2015).

Many of the claims in the Complaint are based on

allegations that do not involve an adverse employment action.

"An adverse employment action is more disruptive than a mere

inconvenience or an alteration of job responsibilities." Id. at

312 n.10 (quotation marks omitted). Rather, it is "a materially

significant disadvantage with respect to the terms of the

plaintiff's employment," including, for example, "termination, demotion, a less distinguished title, a loss of material benefits, or significantly diminished material responsibilities." Id. (alterations and quotation marks omitted). "Where assignments fall within the duties of a plaintiff's position, receiving unfavorable schedules or work assignments does not, without more, rise to the level of an adverse employment action." Johnson v. Long Island Univ., 58 F. Supp. 3d 211, 224 (E.D.N.Y. 2014). Thus, the allegations that the plaintiff was assigned to dangerous posts or given unpleasant assignments cannot support a claim of age or race discrimination because those assignments do not constitute the type of "materially adverse change in the terms and conditions of employment" required to establish an adverse employment action. Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (teacher's reassignment to purportedly inferior school did not constitute an "adverse employment action" for the purposes of the plaintiff's age discrimination claim); see also Makinen v. City of New York, 53 F. Supp. 3d 676, 692–93 (S.D.N.Y. 2014) (police officer's temporary shift change, which did not impact her salary, benefits, or title, did not constitute an adverse employment action). Although allegedly unpleasant and inconvenient, the plaintiff's assignments to work the barrier section, transport a prisoner, and guard the

precinct cells were not adverse employment actions because they were standard officer assignments and were unaccompanied by any "materially adverse change" in the plaintiff's employment such as a demotion, loss of responsibility, change in salary, reduction in benefits, or missed opportunity for career advancement. Galabya, 202 F.3d at 640; see also Weeks v. N.Y. State Div. of Parole, 273 F.3d 76, 86-87 (2d Cir. 2001) (plaintiff parole officer's transfer and reassignment to a different office did not constitute a demotion and therefore was not an adverse employment action), abrogated on other grounds by Nat'l R.R. Passenger Corp., 536 U.S. at 101. As the Court of Appeals noted in Staten III, "receiving orders to work in dangerous locations or control dangerous situations" or to complete unpleasant or inconvenient tasks are normal parts of the plaintiff's employment as a police officer. 653 F. App'x at 81. Taken together, the allegations in the Complaint that the plaintiff was forced to work in dangerous locations or otherwise given undesirable posts and assignments cannot form the basis of a claim for race or age discrimination because those allegations do not support a finding that the plaintiff was subjected to an adverse employment action.

The only allegation of discrimination that is not time-barred or subject to claim preclusion is that two other officers told the plaintiff that they feel that Sergeant Leone is racist,

and that the plaintiff himself has concluded that Sergeant Leone
"certainly has a problem with minority [p]olice officers."
Compl. ¶ 46. However, the Complaint fails to allege any facts
that would provide minimal support for the proposition that
Sergeant Leone took any action against the plaintiff because of
the plaintiff's race. Rather, the Complaint merely alleges that
Sergeant Leone spoke to the plaintiff in "a very nasty, and
unprofessional manner" while giving the plaintiff an unpleasant
work assignment. Compl. ¶ 37; see id. ¶¶ 36-46.

In response to the motion, the plaintiff copies and pastes
allegations from a January 2017 EEOC intake questionnaire, many
of which are not included in the Amended Complaint. Opp. to Mot.
pp. 19-27. For example, the plaintiff alleges that several
officers who were involved in decisions regarding the
plaintiff's career advancement have since been found responsible
for corruption and other forms of wrongdoing. See Mem. in Opp.
pp. 22-25. None of those allegations provide any support for the
proposition that any decisions made with respect to the
plaintiff were made with discriminatory intent. In sum, many of
the claims under Title VII and the ADEA fail to allege any
adverse employment action, and even those claims that are not
claim precluded or time-barred are not accompanied by "minimal
support for the proposition that the employer was motivated by

discriminatory intent," and must therefore be dismissed.
Littlejohn, 795 F.3d at 311.

**2.**

The Complaint, construed liberally, also includes claims of race-based hostile work environment in violation of Title VII. "When the workplace is permeated with discriminatory intimidation, ridicule, and insult" based on race "that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 604 (2d Cir. 2006) (quotation marks omitted). "A hostile work environment claim requires a showing [1] that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and [2] that a specific basis exists for imputing the objectionable conduct to the employer." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002) (quotation marks omitted). Mere offensive utterances are not sufficient to establish a hostile work environment. The Court of Appeals has held that "[f]or racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity," which generally requires that "instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." Schwapp v. Town of

<u>Avon</u>, 118 F.3d 106, 110 (2d Cir. 1997) (alteration and quotation marks omitted). "Thus, whether racial slurs constitute a hostile work environment typically depends upon the quantity, frequency, and severity of those slurs, considered cumulatively in order to obtain a realistic view of the work environment." <u>Id.</u> at 110-111 (internal citation and quotation marks omitted). More recently, the Court of Appeals noted that it has not foreclosed "the possibility that the one-time use of a severe racial slur could, by itself, support a hostile work environment claim when evaluated in the cumulative reality of the work environment." <u>Daniel v. T & M Protection Res., LLC</u>, --- F. App'x ---, 2017 WL 1476598, at *1 (2d Cir. 2017) (summary order). The court there stressed the impact of "the use of an unambiguously racial epithet . . . by a supervisor in the presence of his subordinates." <u>Id.</u> (quotation marks omitted).

The Complaint alleges not a single racial slur, racially charged comment, or incident involving racial enmity, let alone one sufficiently severe as to form the basis of a claim for hostile work environment. The only specific instances of alleged harassment by another individual consist of allegations that (1) Sergeant Leone spoke to the plaintiff "in a very nasty, and unprofessional manner" on one occasion; (2) that Lieutenant Schelberger "mount[ed] an ongoing attack" against the plaintiff; (3) that Lieutenant Healy made a sexually suggestive comment to

the plaintiff and made two inappropriate jokes about the
plaintiff to two female officers; and (4) that members of the
N.Y.P.D. harassed the plaintiff's daughter at the plaintiff's
primary residence while he was not present. Compl. ¶¶ 37, 56-59,
72-80, 83-88.[5] None of those instances, or any other conduct
alleged in the Complaint, involves any alleged facts that would
suggest "a linkage or correlation to the claimed ground of
discrimination" on the basis of race. Alfano, 294 F.3d at 377.

Moreover, the allegations, taken together and accepted as
true, do not amount to conduct that is "sufficiently severe or
pervasive to alter the conditions of the victim's employment and
create an abusive working environment." Schiano, 445 F.3d at 604
(quotation marks omitted). The conduct alleged was neither
frequent nor severe; the plaintiff was not subjected to any
physical threats; and the specific comments alleged to have been
made were no more than "mere offensive utterance[s]." Harris v.
Forklift Systems, Inc., 510 U.S. 17, 23 (1993). The Complaint
therefore fails to state a claim for hostile work environment.

**3.**

The Complaint also includes purported claims for
retaliation. To state a plausible claim for retaliation in
violation of Title VII and the ADEA, "a plaintiff must plead

---

[5] The plaintiff does not allege any facts suggesting that any
individuals associated with the N.Y.P.D. were involved with the
encounter at the plaintiff's home in Monticello, New York.

facts that would tend to show that: (1) []he participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging [him]; and (3) there exists a causal connection between the protected activity and the adverse action." Patane v. Clark, 508 F.3d 106, 115 (2d Cir. 2007) (Title VII) (per curiam); see also Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010) (Title VII and ADEA). The protected activity "usually takes the form of filing a formal complaint with an agency or filing a lawsuit," Kotcher v. Rosa and Sullivan Appliance Ctr., Inc., 957 F.2d 59, 65 (2d Cir. 1992), but "informal protests of discriminatory employment practices, including making complaints to management" may also suffice, Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990).

The plaintiff appears to misapprehend the nature of a retaliation claim. Being subjected to discriminatory or harassing treatment is not the basis of a retaliation claim. Rather, it is the causal connection between the plaintiff's protected activity and an adverse employment action that forms the basis of a retaliation claim. Thus, the allegations that the plaintiff was subject generally to "retaliation" that is unconnected to any form of protected activity cannot support a claim of retaliation. See Compl. ¶ 20 (the plaintiff found the refusal to allow him to sit for the lieutenant's exam "to be . .

. retaliation against [him]"); ¶ 58 (alleging that Lieutenant
Schelberger created a hostile work environment for the plaintiff
"[a]s a form of retaliation").

The only conduct that is alleged to have any connection to
purported protected activity is the allegation that Lieutenant
Hillian refused to correct the plaintiff's sick reports in
November 2015 "as a form of retaliation against [the plaintiff]
for speaking out against the NYPD." Compl. ¶ 94. But the
Complaint does not allege any facts that would plausibly suggest
a connection between any of the plaintiff's protected activity
and any of the allegedly retaliatory conduct. The plaintiff
offers no comments or other direct evidence of a causal
connection, and although a plaintiff may rely on temporal
proximity between known protected activity and an adverse
employment action, such proximity "must be very close," and none
is alleged here. Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268,
273 (2001) (quotation marks omitted). The protected activity
closest in time to the alleged misconduct by Lieutenant Hillian
was apparently the plaintiff's EEOC complaint filed in July
2015, four months before the allegedly retaliatory conduct. Mem.
in Opp. p. 28.[6] That proximity alone, such as it is, does not

_____

[6] The Court assumes for the purposes of the motion to dismiss
that such an EEOC complaint was actually filed in July 2015,
although the plaintiff has not attached the complaint anywhere
in his papers.

suggest causality. See Dixon v. Int'l Fed'n of Accountants, 416 F. App'x 107, 110-11 (2d Cir. 2011) (summary order) (temporal proximity of four months was insufficient to establish retaliation in the absence of direct evidence of a causal connection). Given the absence of allegations to support an inference that there was any connection between any protected activity by the plaintiff and any allegedly disadvantageous employment action, the Complaint fails to state a claim for retaliation.

**D.**

The remainder of the claims in the Complaint allege state and city law claims under the New York State and New York City Human Rights Laws. The Court declines to exercise supplemental jurisdiction over those claims. See Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003) (noting that the district court may, in its discretion, decline to exercise supplemental jurisdiction over state law claims where "the district court has dismissed all claims over which it has original jurisdiction" (quoting 28 U.S.C. § 1367(c)(3)).

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, those arguments are either moot or without merit. For the foregoing reasons, the City's motion to dismiss is **granted** and the

Complaint is dismissed. The federal claims are dismissed with prejudice and the claims under the New York State and New York City Human Rights Laws are dismissed without prejudice to their being raised in state court. The Clerk is directed to close all pending motions and enter judgment closing this case.

**SO ORDERED.**

**Dated:**     **New York, New York**
             **July 10, 2017**          __/s/_____
                                        **John G. Koeltl**
                                  **United States District Judge**